UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:25-mj-02181-Reid

UNITED STATES OF AMERICA

v.

KEVIN BRANSON,
GEORGE CHRISTOPHER ALVAREZ, and
LISBEY DE LA CARIDAD DIAZ HERNANDEZ,

      Defendants.
_____/

FILED BY YH D.C.
Jan 29, 2025
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)?   No

2. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023?   No

3. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024?   No

4. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024?   No

Respectfully submitted,

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

By:   /s/ Juan Antonio Gonzalez
      JUAN ANTONIO GONZALEZ
      Assistant United States Attorney
      Florida Bar No. 897388
      11200 NW 20th Street, Suite 101
      Miami, Florida 33172
      Telephone: (305) 715-7640/7653
      Email: Juan.Antonio.Gonzalez@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. 1:25-mj-02181-Reid |
| Kevin Branson, George Christopher Alvarez and Lisbey De La Caridad Diaz Hernandez, | ) ) ) | |
| Defendant. | | |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  November 2024 through January 28, 2025  in the county of  Miami-Dade  in the Southern District of  Florida , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §846 | Conspiracy to Possess with Intent to Distribute methamphetamine, butonitazene, and protonitazene, a Schedule 1 controlled substance (Kevin Branson) and George Christopher Alvarez) |
| 18 U.S.C. §922(g) | Possession of a firearm by a convicted felon (Kevin Branson) |
| 21 U.S.C. §856 | Maintaining a drug involved premise (Lisbey De La Caridad Diaz Hernandez) |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_____
Complainant's signature

Jacob Mount, Special Agent DEA
Printed name and title

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by  Face Time

Date: 1/29/2025

_____
Judge's signature

City and state:  Miami, Florida

Honorable Lisette M. Reid, United States Magisrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Jacob Mount, being first duly sworn, hereby depose and state the following:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Drug Enforcement Administration ("DEA"), and have been since May 2023. In connection with my official duties and as defined by 18 U.S.C. § 2510(7), I am an investigative or law enforcement officer of the United States, as defined by Federal Rule of Criminal Procedure 41(a)(2)(C). I am currently assigned to the Miami Field Division, High Intensity Drug Trafficking Area (HIDTA) Task Force Group 41. Prior to my assignment in Miami and certification as a Special Agent, I was assigned to the DEA Providence District Office as a Task Force Officer (TFO) for approximately one year. I carried out this assignment while simultaneously employed with the East Providence Police Department, where I was a police officer for almost eight years. I was assigned to a plainclothes narcotics unit for the last eighteen months of my career as a police officer. I graduated from the Rhode Island Municipal Police Academy in 2015 and the DEA Basic Agent Academy in 2023. I hold a Bachelor of Arts in History from the University of Rhode Island and a Master's in Public Administration from Johnson and Wales University.

2. During my time both as a police officer and as a Special Agent, I have participated in numerous investigations involving violations of state and federal controlled substances laws, including Title 21, United States Code, Section 841(a)(1) and 846. A number of those investigations resulted in arrests, indictments, and convictions for violations of drug law and/or other criminal offenses; the seizure of drugs, money, and vehicles; and the forfeiture of personal property. I have participated in all aspects of drug investigations, including physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of

search warrants, the affecting of arrests, and debriefings of defendants, informants, and witnesses who had personal knowledge regarding major narcotics trafficking organizations. I have also reviewed recorded conversations and telephone, financial, and drug records, and I have been the affiant for five (5) federal Title-III orders as part of narcotics and money laundering investigations.

3. I submit this affidavit for the limited purpose of establishing probable cause for a Complaint alleging that in or about November, 2024 through on or about January 28, 2025, Kevin BRANSON (hereinafter, "BRANSON") and George ALVAREZ (hereinafter, "ALVAREZ") did knowingly conspire to possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 846. Additionally, I submit this affidavit for the limited purpose of establishing probable cause that on or about January 28, 2025, BRANSON did knowingly and willfully possess a firearm and ammunition as a convicted felon, in violation of Title 18, United States Code, Section 922(g). Finally, I submit this affidavit for the limited purpose of establishing probable cause that in or about November, 2024 through on or about January 28, 2025, Lisbey DIAZ HERNANDEZ (hereinafter, "DIAZ") did knowingly maintain and control a residence used for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance, in violation of Title 21, United States Code, Section 856.

4. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not contain all of the information known to me or other law enforcement officers involved in this investigation. The facts and information contained in this affidavit are based on my personal knowledge and observations, as well as information received in my official capacity from other individuals, including other law enforcement officers involved in this investigation, as well as my review of records, documents, and other physical items obtained during the course of this investigation.

## PROBABLE CAUSE

5. On or about December 5, 2024, law enforcement learned from a source of information ("SOI") that Kevin BRANSON had received a shipment of one (1) kilogram of a product called Firmapress during the month of November, 2024. The Firmapress was listed as baby blue in color. Based on my training and experience, I am aware that Firmapress is the brand name of a product used as a binding agent to "press" or manufacture counterfeit pharmaceuticals containing illicit narcotics. Furthermore, I understand that the color of the binding agent is often indicative of the type of narcotic being counterfeited. Specifically, I am aware that a blue or baby-blue binding agent is commonly used to produce counterfeit Oxycodone or Percocet pills labeled "M30". Furthermore, I am aware that these counterfeit "M30" pills typically contain synthetic opioids such as fentanyl.[1]

6. The SOI identified the Firmapress recipient as BRANSON with telephone number (786) 492-9057, email address prikvinnn@gmail.com, and a shipping address of 23521 SW 107th Pl, Miami, FL. Investigation of open-source and law enforcement databases identified a BRANSON with date of birth 05/20/2000 with ties to that telephone number and address. A check of the Florida Driver and Vehicle Information Database (DAVID) showed BRANSON to have a suspended FL driver's license with license number B652-500-00-180-0 and a listed address of 136 NW 44th Ave, Miami, FL. DAVID also showed a birth certificate identifying BRANSON's mother as Misclaydis Delgado. Law enforcement obtained subscriber information for the telephone number associated with BRANSON and determined it was subscribed to Misclaydis Delgado with an address of 136 NW 44th Ave, Miami, FL. Based on my training and experience, I am aware that narcotics traffickers commonly avoid listing their own names on telephone subscriptions to avoid

---

[1] In this case, as noted below, the pills contained Protonizatene and Butonitazene, which are both Schedule I controlled substances.

3

detection by law enforcement.

7. A check of BRANSON's criminal history showed a prior federal arrest in October, 2018 with a subsequent conviction for the unlawful importation of a controlled substance. BRANSON was sentenced to 366 days prison and thirty-six (36) months of supervised release.

8. Further investigation produced US Customs and Border Protection (CBP) records indicating that BRANSON had received several shipments of a substance listed as "READY MIX BINDER" since May, 2024 from an international shipper. From my training and experience, I understand "READY MIX BINDER" to be indicative of a pill dye and binding agent similar to that produced by Firmapress.

9. Based on my training and experience, in conjunction with independently corroborated information from a DEA confidential source ("CS") as recently as December, 2024, I understand that one (1) kilogram of a pill-binding agent such as Firmapress or "READY MIX BINDER" can yield the production of approximately ten thousand (10,000) counterfeit M30 pills containing synthetic opioids such as fentanyl. CBP records indicated that, since May, 2024, BRANSON had received an approximate aggregate weight of twenty-five (25) kilograms of "READY MIX BINDER". Based on my training and experience, I believe this is indicative of an operation with the capability to manufacture as many as two hundred fifty thousand (250,000) counterfeit M30 pills containing synthetic opioids.

## DELIVERIES OF BINDING AGENTS

10. On December 13, 2024, investigators observed BRANSON receive a shipment of approximately four (4) kilograms of "READY MIX BINDER" to his residence at 23521 SW 107th Place, Homestead, FL. Upon the FedEx delivery of this package, BRANSON utilized his vehicle, a white Mercedes-Benz model C250 (hereinafter, "the C250"), to transport this package to

4

ALVAREZ's residence at 715 SE 17th Ave, Homestead, FL and meet with ALVAREZ. BRANSON was observed carrying this package into ALVAREZ's residence.

11.  ALVAREZ was identified by law enforcement using a combination of telephone toll analysis on the telephone number utilized by BRANSON, open-source and law enforcement database checks of Lisbey DIAZ HERNANDEZ (ALVAREZ's girlfriend, who, as relevant to the violation of Title 21, United States Code, Section 856, is the homeowner of ALVAREZ's residence, hereinafter, "DIAZ"), and a search of the trash outside the curtilage of their residence which showed mail addressed to ALVAREZ at that address. ALVAREZ has a date of birth of 05/08/2000 and has one prior arrest for possession of a controlled substance in Miami, FL in April, 2019. It should be noted DIAZ was further identified by her FL driver's license photo and mail found during a search of the trash outside her and ALVAREZ's residence. DIAZ has a date of birth of 10/15/1995 and has no prior criminal history.

12.  Less than three (3) weeks later, on December 31, 2024, investigators observed BRANSON receive another shipment of "READY MIX BINDER" at his residence. The weight of this package was listed as approximately ten (10) kilograms. This time, law enforcement observed ALVAREZ arrive at BRANSON's residence in his black 2024 Chevrolet Silverado (hereinafter, "the Silverado"), and watched as ALVAREZ and BRANSON left together with the package in the Silverado. Based on my training and experience, I am aware that patterns such as this are often indicative of two or more individuals involved in a conspiracy to work together toward a common goal. In this circumstance, and based on the foregoing concerning the understood uses of "READY MIX BINDER", I believe the common goal was to manufacture and distribute counterfeit pharmaceuticals.

## SHIPMENT OF PARCELS CONTAINING NARCOTICS

13. On January 6, 2025, investigators established surveillance on ALVAREZ's residence. BRANSON was observed exiting the residence carrying a white or clear plastic bin and placing it inside the C250. BRANSON departed in the C250, eventually arriving at his own residence. Later that day, law enforcement observed BRANSON drive the C250 from his home to the US Post Office located at 22350 Old Dixie Highway, Miami, FL. BRANSON exited the C250 wearing a dark hooded sweatshirt with his hood drawstrings pulled tight. Based on my training and experience, I am aware that individuals will often wear a hooded sweatshirt in this manner while trying to avoid being identified during the commission of a crime. Investigators observed BRANSON carrying a white or clear plastic bin consistent with the one he had earlier placed in the C250 at ALVAREZ's residence and watched as he brought it into the Post Office. BRANSON exited moments later and drove the C250 back to his home.

14. Within minutes, DEA personnel entered the US Post Office and worked with a postal employee to determine whether BRANSON had left any packages to be shipped. Investigators identified six (6) large cardboard envelopes and three (3) small cardboard boxes, each with the same return address but different "SHIP TO" addresses, which they believed had been left by BRANSON. A police narcotics K-9 conducted a sniff of these packages together and alerted to the presence of narcotics. DEA personnel contacted personnel with the United States Postal Inspection Service (USPIS) for assistance, and the parcels were secured for further investigation.

15. Surveillance footage was later obtained from the USPIS which showed an individual matching BRANSON's description enter the Post Office consistent with the time law enforcement had observed BRANSON enter. The video showed this individual carrying a plastic

6

bin consistent with the one investigators had seen BRANSON remove from the C250. The video then showed that the bin contained parcels consistent with those located by law enforcement, and the video showed that this individual placed these parcels in the same "drop box" where law enforcement had located the above-mentioned nine (9) parcels.

16. On January 9, 2025, the Honorable Edwin G. Torres, Chief United States Magistrate Judge, Southern District of Florida, authorized the search of one (1) of these parcels. DEA and USPIS personnel conducted this search on January 10, 2025 and discovered that the parcel contained what was believed to be approximately five hundred (500) pills in an unmarked, vacuum-sealed bag with a gross weight of one hundred seventy-three (173) grams. These pills were off-white in color and marked identically to 10mg Percocet tablets, which are commercially-produced pharmaceuticals. Based on my training and experience, I am aware that narcotics traffickers manufacturing counterfeit pharmaceuticals often utilize shipping services such as the United States Postal Service to distribute narcotics. A field test of these tablets for the presence of narcotics was negative. However, based on my training and experience, I am aware that counterfeit pills such as these may contain synthetic opioids such as butonitazene, which is a novel Schedule I controlled substance in the nitazene class. At the time of this seizure, investigators did not have the capability to conduct a field test for the presence nitazenes. An official pill count and DEA laboratory test of the chemicals contained in these tablets is pending.

17. On January 17, 2025, law enforcement established surveillance on ALVAREZ's residence. They observed BRANSON place a white or clear plastic bin with US Postal markings in the rear of the C250, and saw that it contained several parcels consistent with the above-mentioned parcels identified on January 6, 2025. BRANSON was wearing a black T-shirt, and entered the driver's seat of the C250 as ALVAREZ entered the front passenger's seat. They then

departed and drove directly to the US Post Office located at 1000 West Palm Dr, Homestead, FL. Once there, BRANSON exited the driver's seat wearing a red hooded sweatshirt with the drawstrings of the hood pulled tight. This was identical to the behavior observed at the US Post Office on January 6, 2025. BRANSON removed the white or clear plastic US Postal bin from the C250 and entered the building. Investigators observed through the windows of the building that BRANSON had approached what appeared to be a "drop box" close to an exterior wall inside, and he appeared to be depositing the items he had carried into the building inside the bin. BRANSON exited the building and was observed waving the plastic US Postal bin around, clearly showing that it was empty. He and ALVAREZ departed the area and returned directly to ALVAREZ's residence.

18.     Investigators entered the US Post Office moments later and spoke with a postal employee who granted them access to the secured mail area inside the building. They located the "drop box" consistent with where they had observed BRANSON depositing his parcels, and identified thirteen (13) USPS priority packages that had been left behind. Eight (8) of these were large cardboard envelopes and five (5) were small cardboard boxes. Consistent with the parcels identified on January 6, 2025, these parcels had differing "SHIP TO" addresses throughout the United States, although at least two (2) of these recipients were identified as identical to two (2) of the recipients identified on January 6, 2025. Six (6) of the parcels listed one (1) return address, and seven (7) listed another. Neither of these return addresses matched that which was identified on January 6, 2025. Based on my training and experience, I am aware that narcotics traffickers who utilize the US Postal Service and other shipping services to distribute narcotics will often utilize fraudulent or false return addresses to avoid detection by law enforcement.

19.     On January 22, 2025, the Honorable Lauren F. Louis, United States Magistrate

8

Judge, Southern District of Florida, authorized the search of one (1) of these parcels. DEA and USPIS personnel conducted this search on January 23, 2025. Inside the parcel, law enforcement located an estimated two thousand (2,000) pills in an unmarked, vacuum-sealed bag, with a gross weight of four hundred thirty-three (433) grams. Consistent with the seizure made by law enforcement on January 10, 2025, these pills were off-white in color and marked identically to 10mg Percocet tablets, which are commercially-produced pharmaceuticals. A second item was located inside the parcel, and was identified as a small zip-lock plastic bag containing approximately twenty (20) blue pills with varied identifying markings and a gross weight of three (3) grams. Included among these were blue tablets marked "M" on one (1) side and "30" on the other, as well as blue tablets marked with a "V" on one (1) side and "ALG 265" on the other. The markings of these two (2) pill types are consistent with commercially-produced opioid medications such as Oxycodone. These pills were transported to a CBP facility in Doral, FL for analysis. Samples of the off-white tablets marked identically to 10mg Percocet pills and the different types of blue pills all showed a presumptive positive result for the presence of butonitazene, which is the Schedule I controlled substance mentioned above.

20.     Additionally, it should be noted that, on January 21, 2025, investigators established surveillance at BRANSON's residence. They observed BRANSON exit the residence and place a plastic US Postal bin in the trunk of the C250, then depart and arrive at another US Post Office. Once there, BRANSON exited the C250 wearing a hooded sweatshirt with the hood drawstrings pulled tight once again. BRANSON removed the bin from the trunk and entered the Post Office, then exited moments later with an apparently empty bin consistent with other shipments observed by law enforcement. No packages were seized at that time due to operational conflicts, however this pattern of behavior was recognized by investigators as consistent with the parcel seizures from

BRANSON shipments on January 6, 2025 and January 17, 2025.

## USE OF A STORAGE UNIT TO FACILITATE TRAFFICKING OPERATION

21. Following the above-described US Postal shipment on January 17, 2025, a federally-authorized electronic tracking device ("ETD") attached to the Silverado[2] showed that it traveled to the vicinity of the U-Haul storage facility at 1050 N Flagler Ave, Homestead, FL, where it remained for approximately twenty (20) minutes. Video footage and customer information later obtained from U-Haul showed that ALVAREZ, BRANSON, BRANSON's girlfriend Yeriam Green Gonzalez (hereinafter, "Green Gonzalez"), and BRANSON's juvenile child arrived at that facility in the Silverado and rented a public storage unit (hereinafter, "the storage unit") in BRANSON's name.

22. The ETD showed that, on January 20, 2025, the Silverado again traveled to this U-Haul storage location for a short period of time. Video footage later obtained from U-Haul showed that ALVAREZ met BRANSON in the parking lot of this location, and that BRANSON had arrived in the C250[3]. ALVAREZ was observed wearing a black and white hooded sweatshirt with a Nike logo on it. The video showed that BRANSON and ALVAREZ entered the facility and placed a large cardboard box inside the storage unit. BRANSON departed in the C250 and ALVAREZ departed in the Silverado, and ETD data showed that the Silverado then traveled to another US Post Office. Video footage obtained from the USPIS showed that a hooded individual attempted to enter the Post Office with a clear or white plastic US Postal bin, but the building was

---

[2] On January 15, 2025, the Honorable Jonathan Goodman, Chief United States Magistrate Judge, Southern District of Florida authorized the installation of GPS electronic tracking devices ("ETDs") on the C250 and the Silverado. Investigators installed an ETD on the Silverado on January 16, 2025 and installed an ETD on the C250 on January 21, 2025.

[3] As mentioned above, an ETD was not installed on the C250 until the following day, on January 21, 2025.

closed for a federal holiday. This individual was wearing a hooded sweatshirt consistent with the one ALVAREZ was observed wearing at the U-Haul facility just moments earlier.

23. On January 22, 2025, investigators observed ALVAREZ depart his residence in the Silverado, and watched as he arrived at the U-Haul facility at 1050 N Flagler Ave, Homestead, FL. Utilizing a combination of live physical surveillance and video footage later obtained from U-Haul, law enforcement observed ALVAREZ remove an item from the storage unit and place it on a wheeled dolly. This item appeared to be physically heavy and it was covered with what seemed to be a gray fitted bed-sheet. Based on my training and experience, I recognized the shape to be consistent in size and profile to a hydraulic tablet press machine, hereinafter referred to as a "pill press". I also recognized its concealment under a sheet to be consistent with an effort to avoid detection. I am aware, based on my training and experience, that the use and possession of pill presses in the United States is regulated by the federal government. I am aware that unregistered pill presses are commonly used by narcotics traffickers to manufacture and produce counterfeit pharmaceutical tablets. ALVAREZ was observed wheeling this suspected pill press to the Silverado and placing it in the rear passenger compartment. ALVAREZ then brought the dolly back to the storage unit and removed two large cardboard boxes. He placed these boxes on the dolly and rolled them out to the Silverado before placing them inside the rear passenger compartment. ALVAREZ then drove the Silverado directly to his residence and unloaded these items. He carried all three into the garage of his residence and the garage door subsequently closed. BRANSON arrived less than fifteen minutes later in the C250 and entered the residence.

24. ETD data later showed that, hours after ALVAREZ was observed carrying the three items taken from the storage unit into his residence, the Silverado departed and made a short trip to another US Post Office. The Silverado later returned to the U-Haul facility, and video footage

obtained from U-Haul showed BRANSON and ALVAREZ exit the vehicle and unload the same two large cardboard boxes and the suspected pill press concealed with the same gray sheet. BRANSON and ALVAREZ placed these items inside the storage unit and departed the facility.

## EXECUTION OF SEARCH WARRANTS ON JANUARY 28, 2025

25. On January 27, 2025, the Honorable Lisette M. Reid, United States Magistrate Judge, Southern District of Florida, authorized the search of BRANSON's residence, ALVAREZ's residence, the storage unit, the C250, and the Silverado. Law enforcement executed these searches on January 28, 2025. These searches resulted in both the identification and seizure of contraband by law enforcement. These seizures included, but were not limited to, the following:

    a. **From BRANSON's residence:** several plastic bags containing different types of suspected counterfeit pills consistent with those seized earlier in this investigation; several USPS parcels each containing varied quantities and types of suspected counterfeit pills consistent with those seized earlier in this investigation; a Smith & Wesson 9mm semi-automatic handgun; bulk US currency; and several pieces of jewelry;

    b. **From ALVAREZ and DIAZ's shared residence:** tens of thousands of suspected counterfeit pills consistent with those seized earlier in this investigation; liquid gel material suspected to contain narcotics meant for the manufacture of counterfeit pills (pending laboratory testing); pill press components, digital scales, glassware and instruments consistent with the clandestine manufacture of counterfeit pills; safety glasses, latex gloves, and Naloxone dispensers (which rapidly reverse opioid overdoses); packaging material such as plastic zip-lock bags, rolls of packing paper, packing tape,

     vacuum-seal bags, vacuum sealers, and USPS parcel envelopes and boxes;

  c. **From the storage unit**: an unregistered pill press wrapped in a fitted gray bed-sheet consistent with that seen earlier at the U-Haul facility and ALVAREZ and DIAZ's residence; punch die molds and tablet stamps utilized to manufacture trademarked pharmaceutical pills; 346.1 grams (gross weight) of crystal methamphetamine (positive field test); differing types of suspected counterfeit pills consistent with those seized earlier in this investigation; suspected ecstasy tablets; and other suspected narcotics in powder form which are pending laboratory analysis;

  d. **From the Silverado**: a Glock 9mm semi-automatic handgun, of which ALVAREZ independently volunteered his ownership.

26. It should be noted that the Smith & Wesson firearm seized at BRANSON's residence was located by investigators in the bedroom shared by BRANSON and Green Gonzalez. The firearm was found resting on top of a computer owned by BRANSON. As mentioned above, BRANSON is a convicted felon. Additionally, several packages of suspected counterfeit pills were located in this bedroom.

## CONCLUSION

27. Based on the foregoing facts, I respectfully submit that there is probable cause to support a criminal complaint against BRANSON for violations of Title 21, United States Code, Section 846 as well as Title 18, United States Code, Section 922(g). Additionally, I respectfully

submit that there is probable cause to support a criminal complaint against ALVAREZ for a violation of Title 21, United States Code, Section 846. Finally, I respectfully submit that there is probable cause to support a criminal complaint against DIAZ for a violation of Title 21, United States Code, Section 856.

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
JACOB MOUNT
SPECIAL AGENT
DRUG ENFORCEMENT ADMINISTRATION

Attested to by the applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by Face Time this __29th__ day of January 2025.

_____
HONORABLE LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

14